UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                    :
EMMA CAMPBELL, and              :          CASE NO. 5:07-CV-579
TONYA GRAVES                          :
                                                    :          JUDGE JAMES S. GWIN
                                                    :
            Plaintiffs,                      :          ORDER & OPINION
                                                    :          [Resolving Doc. 358]
vs.                                              :
                                                    :
TRIAD FINANCIAL CORP.,        :
BROMBACKER & WILLIAMS       :
ASSOCIATES, INC., and           :
ASHLEY SHELL                        :
                                                    :
            Defendants.                   :
                                                    :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        After defense verdicts in the instant case, Plaintiffs Campbell and Graves moved for a new

trial arguing that they were prejudiced by Court comments, the time constraints placed on them for

the presentation of their case, the jury's ability to hear some of a sidebar conversation, an evidence

ruling, and the Court's refusal to instruct the jury on the spoilation of evidence. [Doc. 358]. For the

reasons set forth below, the Court **DENIES** the Plaintiffs' motion for a new trial.

## I.  Background

        On June 29, 2005, Plaintiffs Tonya Graves and Emma Campbell purchased a Chevy Classic

via an installment contract from Fred Martin Chevrolet, Inc.  Plaintiffs borrowed $16,568.80 and

agreed to make monthly payments of $398.49.  The contract provided for repossession if the

Plaintiffs became delinquent in their payments.  The Plaintiffs defaulted on their obligations to pay

-1-

Case No. 5:07-cv-579
Gwin, J.

the note that financed the car.  The Defendants then sought the return of the vehicle collateral.  The

Plaintiffs complain about the methods used by the Defendants over a long period trying to find the

car.

In January 2007, Defendant Triad engaged Defendant Brombacker & Williams to locate the

The Plaintiffs alleged that the Defendant Triad's actions invaded their privacy.  Thereafter,

the Defendant Triad began repeatedly calling the Plaintiffs, to learn the location of the car.  By all

accounts, there were many calls made to Plaintiffs numbers.  It is less clear how many calls were

answered.  The Plaintiffs allege that the number became harassing, whereas the Defendants argue

that their actions were reasonable actions of a creditor attempting to recover its collateral.

The Defendant Triad counter-claimed for the amount-owed on the installment contract.

In January 2007, Defendant Triad engaged Defendant Brombacker & Williams to locate the

vehicle for repossession.  The Defendant Bromacker & Williams and their employee the Defendant

Ashley Shell began making a number of calls.  Bromacker & Williams' calls continued after the

Plaintiffs sent the Defendant Triad two cease and desist letters asking Triad to limit contact to mail,

and after the Plaintiff Campbell notified the Defendant Shell to speak only with her attorney.  The

Plaintiffs argued that these actions also invaded their privacy.

The Plaintiffs also claimed defamation *per se* against all three defendants.  The Defendants

called Plaintiffs' friends and family to locate the car and allegedly accused the Plaintiffs of fraud and

concealment. Plaintiffs allege that Defendant Shell called Campbell's sister, her co-worker, and her

mother stating she had committed "fraud and concealment" regarding her car.

Plaintiffs allege they suffered damages from these calls.  Plaintiff Campbell did not claim

for any damages for lost wages.  Her claims for damages for her pain and suffering did not include

any testimony by doctors.

Case No. 5:07-cv-579
Gwin, J.

The jury returned a verdict for the Defendants on all of the Plaintiffs' claims. They awarded the Defendant Triad $3500 from each plaintiff on its counter-claim.

## II.  Legal Standard

Fed. R. Civ. P. 59(a) dictates that "[a] new trial may be granted . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."

> Generally courts have interpreted this language to mean that a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias.

*Holmes v. City of Massillon*, 78 F. 3d 1041, 1045-46 (6th Cir. 1996).

When prejudice that affects the fairness of a proceeding "is cured by instructions of the court, the motion for a new trial should be denied." Id. at 1047.

## III.  Analysis

A. The Court's Questions

The Plaintiffs argue that the Court interjected itself in two ways: (1) it stopped the Plaintiffs' counsel when he had run out of time, noting the testimony was irrelevant regardless; and (2) it suggested that Plaintiffs' counsel was eliciting hearsay at a side-bar.

This case presented a relatively simple matter. The plaintiffs took out a loan to purchase a car, they financed that purchase through a loan secured by a mortgage on the vehicle, they defaulted on their obligation to repay the loan, the defendants made efforts to try to recover the collateral, and in repeated calls the plaintiffs refused to identify where the collateral vehicle was during a time that

Case No. 5:07-cv-579
Gwin, J.

the vehicle was driven a large number of miles.  The plaintiffs said the efforts to recover the vehicle

invaded their privacy and statements made in the effort to recover the collateral defamed them.  The

plaintiffs presented no evidence of lost wages or resulting medical or psychological injury.

In some effort to avoid unnecessary burden upon jurors, the Court advised the parties that

it would allocate each side 500 minutes to question witnesses.  Opening statements and final

arguments would not be counted against the time, nor would any time that the parties were not

actually questioning witnesses.  The Court also advised the parties that the "Court will entertain oral

motions for additional time. . . . The Court will be strongly influenced by how a moving party has

used its time to date."

The Plaintiffs' presentation dragged and was repetitive.  In conversations with jurors after

the verdict, they reflected the same impression- that the case was unduly repetitive.

The Plaintiffs argue that the testimony the Court interrupted when the Plaintiffs had run out

of time "was highly relevant to establish that Plaintiff Campbell was the owner of the Cobalt and

Plaintiff Graves was the intended owner of the Malibu. Plaintiff Campbell received many more

phone calls than Plaintiff Graves, but she was only the co-signer of the Malibu, not the original

signer, as mistakenly indicated on the loan application." [Doc. 358].  Actually, the Court called the

parties to a sidebar and encouraged Plaintiffs that they had a limited number of witnesses and the

testimony being sought was irrelevant:

Q.    And could you please indicate to the Court and jury what happened?

A.    When I was there signing for my daughter to get a car at the time I had a
2001 neon and a car dealer said we can get you in a car and it's like well, no
I don't want a car.  And he says well you need the could sign for Tonya to get
a car so why don't you look at a car and I said I do not want a car because my
car was almost paid off.  And he mentioned that something about the neons

-4-

Case No. 5:07-cv-579
Gwin, J.

> when they get over certain amount of miles then something goes wrong with the aluminum heads and he said you should think about getting you another car.  And by the time I left I ended up with a 2005 Chevy could bought because I needed my car to get to work as well in all right.  Let's pull that up Exhibit number just briefly.
>
> Q.     Now, basically Ms. Campbell you were talked into a new car.
>
> THE COURT:  I just want to make a record.  You have got time limit.  And I don't remember any particular claim `the Cobalt.  So just as long as everybody is doing this with eyes wide open.  You  thank you want to spend this limited number of minutes and the minutes count against their [defense] case too.  So you're if you want to spend it now you're welcome to do that but I just want to caution you may well be in a position where you don't get to ask any cross-examination."

[Thurs. Tr., p. 96-97].

In this case, claims were made against Triad Financial, the note and mortgage holder and Brombacker & Williams, the skip-trace company seeking to locate the collateral.  At trial, no claim was made against the car dealer who sold Graves the Malibu or Campbell the Cobalt.  That Plaintiff Graves was the intended owner of the Malibu and Plaintiff Campbell owned the Cobalt, however, was not very relevant to the claims of invasion of privacy–even if it was, the parties had already stipulated to this fact. [Doc. 221, p. 4].  The Court, therefore, did not question relevant testimony, but duplicative and completely irrelevant testimony.

The Court called a side-bar conference because the Plaintiffs' counsel was asking the Plaintiff Campbell to read her own notes to the jury.  This was hearsay under Fed. R. Evid. 801.  The Court pointed that out.  Importantly, the Court did not object to the testimony within the hearing of the jury, but held a side-bar.  *See United States v. Stavroff,* 149 F.3d 478, 482 (6th Cir. 1998) ("If a trial judge feels he must take some action, a side-bar conference outside the hearing of the jury

-5-

Case No. 5:07-cv-579
Gwin, J.

would be an alternate and preferable way to proceed.").  That is precisely what the Court did here.[1/]

Moreover, the Court's actions did not "permeate" the trial, such that a new trial is warranted.
*See* *McMillan v. Castro, 405 F.3d 405, 412 (6th Cir. 2007)*.   The Court interrupted Plaintiff
Campbell's testimony once, not two hundred-fifty times in a one-day trial.  *Compare* *United States
v. Hickman, 592 F.2d 931, 934 (6th Cir. 1979)*.

Finally, this interruption did not prejudice the jury.  The Court instructed the jury that: "If
you have an impression that the court has indicated how any disputed fact should be decided, you
must put aside such an impression because that decision must be made by you, based solely upon
the facts presented to you in this courtroom." The Court presumes ths jurors followed this instruction
and that any juror who took any inference from the Court's interruption disregarded that impression.


B. Time Constraint

"A district court has broad discretion to place limits on the presentation of evidence to
prevent delay, waste of time, and needless presentation of cumulative material." *Trepel v. Roadway
Express, Inc., 40 Fed. Appx. 104, 108 (6th Cir. 2002)*.  In this case, the Court placed a reasonable
time limit on the parties. *See id.* (upholding a 600 minute time limit as reasonable).  Two plaintiffs
claimed against three defendants for intrusion onto seclusion and two of those defendants
defamation, and one defendant counter-claimed on the breach of contract.  There were a number of
facts not at issue.  All parties agreed that the Plaintiffs had fallen behind in their payments.  The
main questions for the jury were whether the number of calls was unreasonable, whether the

---

[1/]The Court held this side-bar well after it came to the Court's attention the "white noise" machine was not
working, and the sidebar was held, as were all other sidebars after that time, on the other side of the jury box, with the
parties speaking in hushed tones.

Case No. 5:07-cv-579
Gwin, J.

defendants had accused the plaintiffs of fraud and concealment, and the amount, if any, still owed

to the defendant-counter-claimant after the resale of the car.  No expert testimony was offered by

any party.  In these circumstances, five-hundred minutes per side was more than reasonable.

Further, as the Court indicated, the Plaintiffs were able to move for more time if they used

their time wisely. [Doc. 287, p. 2].  The Plaintiffs did not use their time wisely, but asked questions

concerning matters that were irrelevant or cumulative.  For example, the parties had stipulated that

Graves owned the car and Campbell co-signed on the note.  Despite the stipulation, the Plaintiffs

spent time having both Campbell and Graves testify as to who's car the Malibu would be. [Thurs.,

Tr. 96-97].  As such, the Court denied the Plaintiffs' motion for additional time before they called

their last witness.  The Court did so before the bailiff brought the jury into the courtroom.  The Court

did grant the Plaintiffs an additional 60 minutes after the close of their case to do any cross-

examining they felt necessary.

Finally, the Plaintiffs fail to allege how the limit of 500 minutes prejudiced them.  The Court

is unaware of any relevant testimony that had not been elicited, and the Plaintiffs do not proffer what

testimony the Plaintiff Campbell would have added.  As such, the Plaintiffs are not prejudiced and

are not entitled to a new trial.  *See Trepel*, 40 Fed. Appx. at 108 (refusing to grant a new trial

because the time limits were not "irreparably prejudicial").

C. Remarks Overheard by the Jury

On the first day of trial, it came to the Court's attention that the "white noise" button was not

working and the jury could hear some of what was being said at the sidebar.  At that time, the Court

immediately moved the location of the sidebar to the side of the bench away from the jury box.

-7-

Case No. 5:07-cv-579
Gwin, J.

After that time, the jury could not hear anything.[2]/

The Court does not believe it said anything during the sidebars held in front of the bench that would have prejudiced the jury.  On the second day of trial, the Court stated that Plaintiffs' counsel had misrepresented himself to the Court because he called more witnesses the second day of trial than he had told the Court on the prior day.[3]/  The Court believes these statements were made after

---

[2]/Counsel spoke in such hushed tones that if they did not speak directly into the microphone, the court reporter, who was significantly closer to the parties than the jury, could not hear the discussion.  The Court, therefore, is confident the jury could not hear the comments.

[3]/The Court said:
THE COURT: You know last night -- you tell us that you're out of witnesses except for your client. You know, we had time yesterday, and you completely misrepresented how many witnesses. You said you had one student from Akron coming in.

MR. GILBERT: I told you.

THE COURT: And now you've marched 6 or 7 witnesses in here today that all could have been at least some of them dealt with last night.

MR. GILBERT: Well, I don't think I misrepresented to you Your Honor.

THE COURT: What is it.

MR. GILBERT: Your Honor I don't think it's misrepresentation.

THE COURT: Did you tell us last night that you only had your two clients.

MR. GILBERT: Okay. I messed up then, you know.

THE COURT: So you make representations today that she's unable to do it.

MR. GILBERT: She's what?

THE COURT: You know, you make representations you're unable to access AT&T. You know you made representations last night that you only had two witnesses left.  You know -- are you more believable today when you say that than you were last night?

MR. GILBERT: So you know, it involves a discovery dispute it sounds to me as to whether you've been able to access it.

MR. GILBERT: True. And we just don't have it, Your Honor. We can't get it. I mean it's been -- we filed all types of documents to you in that regard and we can't access them.

(continued...)

-8-

Case No. 5:07-cv-579
Gwin, J.

the Court learned of the audio problem and had moved the bench conferences to the side of the bench opposite the jury.  As such, the Court doubts the jury heard any of the comments.  Further, this reprimand was entirely appropriate.  The Plaintiffs counsel had represented the previous evening that he only had two more witnesses, and the Court, relying on that, had let the jury leave early. Some jurors travel from distant locations and the Court thought it unfair to impose upon jurors by sending them home early.  Whether that misrepresentation was intentional or not, the Court's conclusion that he had misrepresented himself was not founded in bias or hostility.  Finally, stating counsel had misrepresented himself the day before did not belittle counsel such that the Plaintiffs are entitled to a new trial.  *See* *McMillan*, 405 F.3d at 411-12.

Finally, when Plaintiffs' counsel moved for more time, the Court did say something along the lines of that counsel was not using his time wisely or he was being redundant.  This motion and exchange occurred *before* the jury had been led into the room.[4]  As the jury was not in the room at

---

[3](...continued)
MR. SOLOMON: The Court order said we've given you what we have.  We never had disks.

THE COURT: So in any case, I don't think that her testimony is relevant if it deals with a side issue.  And I earlier made the rulings that the things that were in the possession of AT&T you had every ability to subpoena AT&T. They didn't have physical control over the AT&T records, and I made a finding that they did all they could to try to get you access to the AT&T records.  So the fact that you didn't subpoena AT&T to try to get the same records that I think is, you know, something that could have been done, but beyond that, I don't think they're responsible.

(Proceedings had in open court:)

THE COURT: So who is the next witness?

[Thurs. Tr. 67-69].

[4]MR. GILBERT:  Your Honor before the jury comes out we lieutenant like to petition for more time.  I don't know where we're at with your time.

THE COURT:  You've used 406 minutes.  I would in any case deny.  I think there is sufficient time left.  And I think it's.

MR. GILBERT:  I'm sorry Your Honor I didn't hear that.

(continued...)

-9-

Case No. 5:07-cv-579
Gwin, J.

the time, the Court is confident that they did not hear that reprimand.

D. Spoilation Instructions

Under Ohio law, a party may obtain an instruction on the spoilation of evidence if: (1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, *(3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case,* (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts. *Smith v. Howard Johnson Co.*, 67 Ohio St. 3d 28, 29 (1993)(emphasis added).  As detailed in this Court's November 13 order, Doc. 321, the Plaintiffs have not alleged any facts that suggest that Defendant Triad engaged in willful destruction.  As found in that order, the Defendant Triad did not have control over the documents at issue.  Therefore, the Plaintiffs were not entitled to this instruction as a matter of law.

E. Exhibit 23

The Court initially indicated that Exhibit 23 would not be admitted as hearsay.  The Court reversed itself and allowed the exhibit to be introduced into evidence at the end of the trial after finding that the exhibit contained a statement against interest that was not hearsay under Fed. R. Evid. 801 ("(d) Statements which are not hearsay. A statement is not hearsay if-  The statement is offered against a party and is . . .(D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.")  The

---

[4]/(...continued)

THE COURT: You've got 406 minutes. I'm deny the motion. I don't think up well used the time had you. I think it's been repetitive. And I think if you talk to the jurors after they repeat the same observation. In any case you have 94 minutes left. And I think you could conclude it in that amount of time.

[Thurs. Tr. 70-72].

Case No. 5:07-cv-579
Gwin, J.

exhibit went back to the jury room.  Exhibit 23 was an email sent from Sharon Brombacker, an employee of Brombacker & Williams, to Carl Rexroad, an employee of Triad.  The email indicated that Rexroad knew he had advised the Defendant Bromacker & Williams to continue the calls even after the Plaintiffs sent their cease and desist letters.

The Court finds no ground for granting a new trial based on the initial exclusion of this evidence.  The exhibit was admitted into evidence.  The jury was able to see it in the exhibits taken back to them, the counsel discussed it in his closing arguments. [Fri, Tr. 171-173].  As such, the jury was still able to consider the evidence.  Therefore, the Court does not find that justice requires a new trial.

## IV.  Conclusion

For the reasons discussed above, the Court **DENIES** the Plaintiffs' motion for a new trial.

IT IS SO ORDERED.


Dated: January 3, 2008                              s/          *James S. Gwin*
                                                    JAMES S. GWIN
                                                    UNITED STATES DISTRICT JUDGE

-11-